Estelle KILLIAN, Plaintiff/Appellant,

v.

Moss CAMPBELL and wife, Alene Campbell, Defendants/Appellants.

Wade P. CAMPBELL and wife, Charlotte P. Campbell, Intervening Plaintiffs/Appellees,

v.

Estelle KILLIAN, Defendant/Appellant.

Court of Appeals of Tennessee, Middle Section.

June 27, 1988.

Certiorari Denied by Supreme Court Oct. 31, 1988.

William C. Killian, Jasper, for plaintiff/appellant Estelle Killian.

J. Curtis Smith, Greer & Smith, Dunlap, for defendants/appellants, Moss Campbell and Arlene Campbell and intervening plaintiffs/appellees, Wade P. Campbell and Charlotte P. Campbell.

## OPINION

F. LLOYD TATUM, Special Judge.

### THE PLEADINGS

This suit was originally filed by Estelle Killian against Moss Campbell to set aside a deed from Estelle Killian to Moss Campbell and wife, Alene Campbell. The grounds alleged in the original complaint were fraud and undue influence. The complaint was later amended so as to sue the original defendants for damages to the plaintiff's land. The defendants, Moss Campbell and wife, Alene Campbell, essentially denied all allegations in the complaint.

Wade P. Campbell and wife, Charlotte P. Campbell, filed an intervening complaint against Estelle Killian, seeking damages as a result of placing a mobile home on the property conveyed to Moss Campbell and wife by the deed sought to be set aside by Estelle Killian. The intervening plaintiffs alleged that they constructed a septic tank,

built a road, constructed a water line and had electricity brought onto the property. They alleged other injuries and damages. The facts alleged in support of the intervening complaint were that the plaintiff, Estelle Killian, had knowledge and gave permission for the placement of the mobile home on the property and for the other expenses incurred by the intervening plaintiffs. Estelle Killian filed an answer to the intervening complaint, denying the material allegations therein. She filed a counter complaint against the counter plaintiffs, Wade P. Campbell and wife, Charlotte P. Campbell, for damage done to her land by the erection and placement of the mobile home thereon at a sight not authorized by said Estelle Killian.

## THE DECREE

The Chancellor entered a decree finding that "the original plaintiff, Estelle Killian, did not receive independent advice upon execution of the deed to the defendants dated November 4, 1986 . . . and because of the confidential relationship between the original plaintiff and the original defendants, the original defendants did exert undue influence over the plaintiff . . ." The Chancellor set aside the deed on that ground.

The decree also found that the intervening plaintiffs made considerable improvements to the original plaintiff's property "with the knowledge and acquiescence of the original plaintiff and without any notice by the original plaintiff to intervening plaintiffs of her claim that the deed to the property had been procurred by undue influence . . ." The Chancellor held that "the original plaintiff is estopped from removing the intervening plaintiffs' mobile home and other improvements from the land of said plaintiff."

The Chancellor declared the deed from Estelle Killian to Moss Campbell and wife, dated November 4, 1986, to be null and void. Estelle Killian, the original plaintiff, was enjoined from removing the mobile home and other improvements placed on the land by the intervening plaintiffs and from interfering with the intervening plaintiffs' use of the mobile home as a residence.

The Chancellor also stated in the decree "that the right of the intervening plaintiffs to maintain their mobile home and improvements on the land of the original plaintiff shall constitute an encumberance on the land and be binding on the successors and assigns of Estelle Killian" to 3.52 acres described in the decree.

The decree also ordered the intervening plaintiffs to "remove the mobile home from the property upon the original plaintiff, Estelle Killian, paying for all costs involved to relocate the mobile home, including the removal and replacement of the porches, septic tank, and field lines . . ." The intervening plaintiffs were given a lien against the 3.52 acres for the cost of such relocation. No award was granted to Estelle Killian for damages to the land by the placement of the mobile home, road, and other changes made to the property.

## THE ISSUES

Moss Campbell and wife, Alene Campbell, appealed as did Estelle Killian.

Moss Campbell and Alene Campbell present issue attacking the finding of the Chancellor that a confidential relationship existed between them and Estelle Killian and that they exerted undue influence over Estelle Killian in obtaining the deed to the property in question.

Estelle Killian presents issue that the Chancellor erred in establishing a lien on her property for the costs of removal and replacement of the mobile home and other improvements. Estelle Killian also states that the Chancellor erred in denying to award damages for "waste" to her real property.

## THE FACTS

We summarize the facts established by the accredited evidence:

During the months of October and November of 1986, the original plaintiff, Estelle Killian, was 84 years of age. She had 6 children and 19 or 20 grandchildren. Ms. Killian had an 8th grade education and was

a widow. She had already given three of her children a portion of her property and it was her intention to divide her remaining 18 acres in such manner that all of her 6 children would have equal shares. She did not intend to give the grandchildren any property because she had too many.

Alene Campbell is a daughter of Estelle Killian. She and her husband, Moss Campbell, live next door to Estelle Killian on 2 acres that Ms. Killian had previously given to them. Another daughter, Lucille, had been given 8 acres and one son had been given 6 acres. The other three children, Raymond, Helen and Arthur, had not been given any land. Ms. Alene Campbell admitted that her mother desired that all six children have equal shares in the land.

Wade P. Campbell is the son of Moss Campbell and Alene Campbell. Wade P. Campbell and his wife intended to return to Grundy County from Atlanta, Georgia and desired land upon which to place a mobile home. Alene Campbell went to her mother and requested more land because she had received only 2 acres from her mother and her mother desired that all six of her children receive an equal share. At that time, her mother, Estelle Killian, had 18 acres. At the instance of Moss and Alene Campbell, a surveyor went upon the land and surveyed 9.05 acres. Alene Campbell went to a lawyer and had a deed prepared describing 9.05 acres. The grantees were Moss Campbell and wife, Alene Campbell and Wade P. Campbell and wife Charlotte P. Campbell. Estelle Killian signed the deed on October 6, 1986, but not before a Notary Public. Alene Campbell took the deed to her daughter, Beverly Myers, who was a Notary Public and Ms. Myers signed a notary acknowledgement.

Alene Campbell testified that she did not intend to keep the 9.05 acres as it was more than her share but they needed to obtain the legal title to the property so that the mobile home could be insured. Moss Campbell told Alene Campbell that Estelle Killian had shown them where to start the survey.

Holes for pads were being dug at the time the 9.05 acres were surveyed. The trailer was not placed near an old apple tree stump where Estelle Killian consented for the mobile home to be placed. Trouble arose in the family because of the fact that a grandson of Estelle Killian was a grantee in the deed of the 9.05 acres and further because of the fact that Alene and her family had received much more than her pro rata share of her mother's land. When this occurred, Moss Campbell, Alene Campbell, Wade P. Campbell, and Charlotte P. Campbell gave a deed to Estelle Killian describing the 9.05 acres. This deed was dated November 3, 1986. On the next day, November 4, 1986, Estelle Killian signed a deed conveying the same property to Moss Campbell and wife, Alene Campbell, only. These deeds were drafted by a lawyer as requested by Alene Campbell.

Alene Campbell admitted that the conveyance of 9.05 acres "was wrong," and that the description of 9.05 acres was used in all of the deeds because they could not obtain another survey. On June 18, 1987, Alene Campbell and Moss Campbell executed a deed to Estelle Killian describing the same 9.05 acres but excluding therefrom 3.5 acres which Moss and Alene Campbell retained. A brother of Alene Campbell, Arthur Killian, staked out the 3.5 acres retained by Moss and Alene Campbell in the last-mentioned deed. He was attempting to settle the matter. Estelle Killian was not present when the 3.5 acres was staked off and did not agree that the boundaries were satisfactory to her. Alene Campbell testified that she gave the portion of the land back without an agreement with her mother.

Alene Campbell resided next to her mother. She had always assisted her mother with her insurance and taxes and "any way she could." The record leaves no doubt that Estelle Killian was 84 years old at the time of these transactions and was infirm both mentally and physically. She had a grammer school education. We accredit the following testimony of Estelle Killian:

"Q. And do you recall going to anyone's office to sign any papers?

A. It seems like I signed something for something, but my mind is bad and I

can't remember these things. I've been here too long; I'm wore out.

Q. Did you ever sign papers that Aileen would bring to you, Mrs. Killian?

A. I don't remember her bringing any papers to me. If she did, I signed them, of course, because I always thought she was all right about everything, anything she wanted to be signed would be all right. But I don't remember signing nothing."

We conclude from the record that Estelle Killian received no independent advice about these transactions until after the mobile home was placed on the property and other improvements made.

## CONCLUSIONS OF LAW

It is our function in non-jury cases, to review the record of the trial court *de novo* with the presumption that the trier of fact acted correctly unless the evidence preponderates otherwise. Rule 13(d), Tennessee Rules of Appellate Procedure; *Kelly v. Kelly,* 679 S.W.2d 458 (Tenn.App.1984).

■ We now address the issue presented by Moss Campbell and wife, Alene Campbell in which they state that no confidential relationship existed between them and that they exerted no undue influence over Estelle Killian in procuring the deed to the property in question.

In *Hogan v. Cooper,* 619 S.W.2d 516 (Tenn.1981), the Supreme Court succinctly stated the applicable law:

"It is well established that when two parties enter into a confidential or fiduciary relationship and the dominant party receives a gift or other benefit from the other party a presumption arises that some improper advantage was taken '...either of the confidential relation existing ...or of the weakness and fraility of the party from whom the benefit was received, ...' thus rendering the transaction invalid. *Graves v. White,* 63 Tenn. 38, 4 Baxt. 38 (1874); *Turner v. Leathers,* 191 Tenn. 292, 232 S.W.2d 269 (1950); *Roberts v. Chase, et al.,* 25 Tenn.App. 636, 166 S.W.2d 641 (1942); *Hollis v. Thomas,* 42 Tenn.App. 407, 303 S.W.2d 751 (1957).

The presumption of invalidity, however, is rebuttable and the rule in this State is that clear and convincing evidence of fairness will suffice. Proof that the donor received independent advice respecting the consequences and advisability of the gift is one example, but not the only one, of such proof of fairness. *Roberts v. Chase, supra; Peoples Bank v. Baxter, et al.,* 41 Tenn.App. 710, 298 S.W.2d 732 (1956); See also *Hester v. Hester,* 81 Tenn. 189, 13 Lea. 189 (1884). *Id.* at 107–08."

The record is clear that Estelle Killian was mentally infirm. Although she did not remember signing the deeds, she testified that if she signed them "because I always thought she was all right about everything, anything she wanted to be signed would be all right." Alene Campbell admitted that her mother did not intend to convey to her 9.05 acres and that the description describing 9.05 acres "was wrong." The evidence is clear that Estelle Killian received no independent advice until long after the deed dated November 4, 1986, was executed and delivered. The evidence does not preponderate against the Chancellor's finding with regard to the validity of this deed and we affirm the portion of the judgment setting it aside.

■ We now consider the issue presented by the plaintiff, Estelle Killian, stating that the Chancellor erred in establishing a lien on her property for the costs of removal and replacement of the mobile home and other improvements.

The Chancellor found, and we agree, that Estelle Killian signed the deed conveying 9.05 acres to Moss Campbell and wife, Alene Campbell, as a result of undue influence. Estelle Killian was not a tort feasor; to the contrary, she was the victim. It is correctly stated that she learned of the placement of the mobile home on the 9.05 acres tract, saying only that the mobile home was not placed where she wanted it but since it had already been placed there, it could stay. Preparation was made for the placement of the mobile home before the deed was procured from Ms. Killian

conveying 9.05 acres to Wade P. Campbell and others dated October 6, 1986. Any appearance of acquiescence was prior to Ms. Killian's receipt of any independent advice. After receiving independent advice from her other children, Ms. Killian stated that she did not desire that the mobile home be located at this site.

Ms. Killian was not a tort feasor and she breached no contract. We disagree with the Chancellor that Ms. Killian is liable to the intervening plaintiffs, Wade P. Campbell and wife, Charlotte P. Campbell, for the removal of their trailer and other improvements on the property and fixing a lien on her property for the costs of such removal. We also find that the learned Chancellor erred in enjoining Estelle Killian from removing the mobile home and other improvements placed on her land by the intervening plaintiffs and from interfering with the intervening plaintiffs' use of the mobile home on her land. This portion of the Chancellor's decree is reversed.

We now come to the sub-issue of Estelle Killian complaining that the Chancellor erred in failing to award her a judgment for damages to her real property. There was evidence that Wade P. Campbell and wife dug holes into which concrete was poured to make a padding for the mobile home. A roadway was constructed over the land and damage of some character was done to trees when the mobile home was moved to the land. Other alterations were made such as the placing of a septic tank, a water line, and electricity thereon.

█ If an injury to the land is permanent, any depreciation in the value will be an element of damages. If the land can be restored to its original value by an expenditure of money and labor, the costs of such money and labor is the basic measure of damages. Other elements might be present for consideration. *Citizens Real Estate v. Mountain States Dev.*, 633 S.W.2d 763 (Tenn.App.1981).

The claim by the plaintiff for damages to her land was all but abandoned at trial. No attempt was made to show whether any injuries to the land ·were permanent or whether the land could have been restored

to its original condition. Further, there was no attempt to prove pecuniary depreciation in the value of the property or the costs of restoring the property to its original condition. With the complete failure of proof on the question of damages, neither the Chancery Court nor this court could enter a judgment in favor of plaintiff for damages to her land, even if the original defendants or the intervening plaintiffs were found to be liable therefor. Therefore, the question of liability is moot.

The case would not be remanded for further proof even if we found Wade P. Campbell and wife, or the original defendants to be liable to plaintiff for damages to the land. We cannot say that the failure to attempt to prove damages was a mere "oversight without culpable negligence." See T.C.A. Section 27–3–128. As stated, there was no effort made to prove damages at the original trial. T.C.A. Section 27–3–128 authorized a remand for further proceedings only when there is an oversight without culpable negligence; this code section does not authorize courts to indulge piecemeal and protracted litigation concerning facts that should have obviously been established at the original trial. Hence, we do not find it necessary to decide whether the plaintiff is entitled to recover damages as a matter of law; any damage sustained could not have been ascertained or computed on this record by the Chancellor or by this court.

It results that the portion of the Chancellor's decree holding that the original plaintiff is estopped from removing the intervening plaintiffs' mobile home and other improvements from the land, enjoining her from doing so, interfering with intervening plaintiffs' use of the mobile home as a resident and fixing a lien on the plaintiff's land for the payment of all costs involved to relocate the mobile home, porches, septic tank and field lines, is reversed. The remaining portions of the Chancellor's decree are affirmed.

One-third of the costs will be paid by Estelle Killian; one-third will be paid by Moss Campbell and wife, Alene Campbell, and the remaining one-third will be paid by

Wade P. Campbell and wife, Charlotte P. Campbell.

CANTRELL and LEWIS, JJ., concur.